## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

KENNETH R. SELLERS,                )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )          Case No. CIV-06-1249-R
                                   )
DR. HOLCOMB, et al.,               )
                                   )
                    Defendants.    )

## REPORT AND RECOMMENDATION

Plaintiff, who has now been released from the custody of the Oklahoma Department of Corrections [Doc. No. 106], filed this action pursuant to 42 U.S.C. § 1983 complaining of violations of his constitutional rights while a pretrial detainee in the Oklahoma County Detention Center ("OCDC") [Doc. No. 1]. Plaintiff is proceeding pro se and *in forma pauperis*[1] [Doc. Nos. 1 and 5]. The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B); service of process and a special report from the officials responsible for the OCDC were ordered [Doc. No. 18]. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). A motion to dismiss filed by named Defendant Whetsel [Doc. No. 28] has been granted by the court [Doc. No. 47] on the recommendation of the undersigned [Doc. No. 36].

---

[1]In accordance with this Court's order, Plaintiff submitted an updated application for leave to proceed *in forma pauperis.* Based on Plaintiff's showing of indigency, the undersigned has entered an order [Doc. No. 110] granting his renewed application and allowing him to proceed without further payment toward the filing fee.

Plaintiff subsequently filed an amended complaint [Doc. No. 64].  The remaining Defendants, W.R. Holcomb, Pam Hoisington, Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), and Correctional Healthcare Management, Inc. ("CHM"), have now filed a motion for summary judgment and brief in support [Doc. No. 100]. Plaintiff has filed his brief in response [Doc. No. 104], and Defendants have filed a supporting brief in reply [Doc. No. 105].  Thus, the matter is at issue.  For the reasons which follow, it is recommended that Defendants' motion for summary judgment be denied.

**Plaintiff's Amended Complaint**

In describing the nature of his case, Plaintiff alleges in his amended complaint that when he was incarcerated at OCDC on May 11, 2006, a Defendant CHMO staff member noted Plaintiff's need for glaucoma medication, but that he was subsequently released on May 19, 2006, without this medication ever being provided [Doc. No. 64, p. 2].[2]  He further alleges that on July 30, 2006, the Midwest City Police Department transported him to OCDC but because he had an injury, he was transported to Midwest City Hospital for medical examination before being booked into the jail later that day.  *Id.* at 2 - 3. Plaintiff maintains that Dr. David Walsh diagnosed a fractured right hand with swelling, prescribed pain medication, and referred Plaintiff to a Dr. Frazier for surgery when the swelling subsided. *Id.* at 3.  He alleges that he was then returned to OCDC and subsequently filed grievances

---

[2]Such allegations are also included in Attachment 1 to the Amended Complaint [Doc. No. 64] which is labeled "Affidavit"; however, the document is not even signed, much less sworn.

due to the facility's failure to provide his glaucoma medication and failure to schedule an outside medical appointment. *Id.* According to Plaintiff, OCDC and Defendant CHMO would not pay for an eye examination for short-term inmates. *Id.* He further alleges that "47 days later" he was taken to O.U. Medical Center for a routine examination at which time an x-ray was taken and he was "referred to surgery to set plaintiff broken hand." *Id.* Plaintiff alleges that, "CHMO never made any of the referred appointment regard medical [t]reatment [and that n]ow plaintiff eye condition had worsening, and his broken hand heal with [a] disfigurement." *Id.*

Count I of the amended complaint alleges a violation of the Eighth Amendment and references "wanton and unnecessary infliction of pain" and maintains that a medical need is serious if it "has been diagnosed by a physician as mandating treatment." *Id.* at 3 - 4. Plaintiff further contends in Count I that CHMO and CHM committed a breach of contract and that Plaintiff is a third-party beneficiary of such contract. *Id.* at 4. Count II alleges a Fourteenth Amendment due process violation, but contains no supporting facts. *Id.* at 5. Compensatory and punitive damages are sought for "harm or injury," physical pain, and mental anguish. *Id.* at 6.

## Analysis

### Standard of Review

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering

a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). And, while a pro se plaintiff's complaint is liberally construed, a pro se plaintiff must adhere to the same rules of procedure which are binding on all litigants. *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007). Thus, strict adherence by a pro se plaintiff to the requirements of Fed. R. Civ. P. 56 is required. With respect to those requirements, the Supreme Court has determined that:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## <u>Eighth Amendment Claim - Failure to Provide and Delay in Providing Medical Care</u>

The deliberate indifference by a prison official to the serious medical needs of an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97 (1976). This deliberate indifference standard has two components: (1) an objective component in which the plaintiff's pain or deprivation must be shown to be sufficiently serious, and (2) a subjective component in which it must be shown that the offending official acted with a sufficiently culpable state of mind. *See Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993); *Miller v. Glantz,* 948 F.2d 1562, 1569 (10th

Cir. 1991). As to the objective component, the Tenth Circuit has stated that a medical condition is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or is so obvious even a lay person would easily recognize the necessity for a doctor's attention. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980). As to the subjective prong of this test, a plaintiff must establish that a defendant knew of a substantial risk of harm and failed to take reasonable measures to abate it. *See Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). An inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of material harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

For a delay in medical treatment to be actionable as an Eighth Amendment violation, the delay "must, in itself, reflect deliberate indifference which results in substantial harm."' *Fleming v. Uphoff*, No. 99-8035, 2000 WL 374295, at *3 (10th Cir. April 12, 2000)(quoting *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)). The "substantial harm" or objective element of this test is satisfied by a showing that a delay in treatment resulted in "lifelong handicap, permanent loss, or considerable pain" and the "deliberate indifference" or subjective element is satisfied by facts indicating that defendant prison officials were aware of facts from which they could infer that the delay would cause a substantial risk of serious harm and did, in fact, draw that inference. *Garrett v. Stratman*, 254 F.3d 946, 949-50 ( 10th Cir. 2001); see, e.g., *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001).

In connection with Plaintiff's broken hand, Defendants maintain in their summary judgment motion as a matter of undisputed fact that:

(1)     On July 30, 2006, plaintiff was transported from the Midwest City Jail to OCDC, where he was incarcerated awaiting trial.  (Exhibit 1, PNC Intake Questionnaire).

* * *

(4)     Plaintiff was sent to hospital on July 30, 2006 for treatment of his broken hand, and was returned to the jail with the hand in a cast. (Exhibit 2, PNC Problem Oriented Record)[.]

(5)     As a result of the initial injury, plaintiff was placed on follow up care to monitor the healing of his hand, and was seen by CHMO staff on July 31, 2006; August 10, 2006; August 18, 2006; August 25, 2006[;] September 1, 2006[;] September 4, 2006; and September 8, 2006. (Exhibit 3, PNC Progress Notes).

* * *

(10)    The Oklahoma County Sheriff's department conducted an investigation following the filing of suit, and determined that the medical care plaintiff received from CHMO was adequate, and that he had received all prescribed medication.  (Exhibit 8, Martinez Report).

(11)    Plaintiff has offered no evidence that he suffered any injury, or that he should have received treatment other than that which he was provided. (Exhibit 9, Plaintiff's Discovery Responses).

[Doc. No. 100, pp. 4 - 5].

The evidence relied upon by Defendants in support of summary judgment consists of CHM and CHMO records as well a discovery response submitted by Plaintiff.   As Defendants maintain, Exhibit 2 reflects that on July 30, 2006, Plaintiff received  treatment for his broken hand and was returned to the jail from Midwest City Hospital with his hand in a cast.  *Id.* at Exhibit 2.  This exhibit further shows that on August 24, 2006, Plaintiff's

fractured right hand was noted by Defendant Hoisington with the indication that "per Dr. Holcomb" he was to have a follow-up appointment for possible surgery. *Id.* Exhibit 3 to Defendants' motion consists of four pages of largely illegible  notes which reflect that Plaintiff was apparently seen on the dates indicated in Defendants' fifth undisputed fact. Pertinent words or phrases, apart from, for example "hand," that are decipherable to the undersigned in connection with Plaintiff's claim – that Defendants failed to take him for surgery to set his broken hand and that he suffered resulting pain and disfigurement – are as follows: on August 10, 2006, "good color and movement[,]" *id.* at Exhibit 3, p. 1; on September 1, 2006, "ortho appt pending?" and "Felicia says approved" but no appointment yet, *id.,* at p. 2; on September 4, 2006, " pt. c/o [   ] pain to [right] hand[,]" and "awaiting orthopedic consult[;]" *id.* at p. 3; and, on September 8, 2006, "not being taken for ortho appt for [right] hand ( told [ ] paperwork done - awaiting appt) [ ] still hurts bad(?)[,]" *id.* at p. 4.

In short, Defendants' evidence establishes that Plaintiff – who was suffering from a right hand fracture – had initial treatment at the hospital and was examined on several occasions thereafter by CHMO staff.  Their evidence further establishes that there was a delay of over thirty-five days – from July 31, 2006 until sometime after September 4, 2006 – before Plaintiff received a follow-up orthopedic appointment.  Moreover, this evidence demonstrates that Plaintiff continued to complain of pain from his broken right hand during this period.  Defendants' evidence, however, does not address – and thus dispute[3] –

---

[3]"Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

Plaintiff's contention that a physician ultimately recommended surgery and that Defendants refused to schedule or otherwise facilitate such surgery.  Defendants never discuss the results of Plaintiff's follow-up appointments although they rely on evidence that Plaintiff was scheduled for such an appointment.  *Id.* at Exhibit 5.

With respect to Plaintiff's evidence, his amended complaint contains a copy of his July 30, 2006, treatment record by a physician at the Midwest City Regional Medical Center with the instruction that a call be made the next morning to schedule a follow-up appointment for Plaintiff's displaced fracture [Doc. No. 64, Attachment 2, sequential pp. 5 and 6]. Plaintiff maintains that he was taken to O.U. Medical Center "47 days later[.]" [Doc. No. 64, p. 3].  Plaintiff's response to the summary judgment motion includes the records from this September 15, 2006, examination at the O.U. Medical Center, including the physician notes [Doc. No. 104, Attachment 11, p. 3].  The physician noted that Plaintiff was "only able to make fist 25 %" and noted his plan for "staff films" and, it appears, for a return consultation in two weeks.  *Id.*  Plaintiff states[4] that this surgeon "confirmed that it is fracture and that it needed to be surgery set by placing pins to set it [and that] a refer appointment would be made." [Doc. No. 104, p. 3]. In addition, he contends that in October, 2006, he "was once more transported to O.U. Medical Center . . . [and was] inform[ed] by O.U. Nurse that

_____

'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex,* 477 U.S. at 323.

[4]All papers filed by Plaintiff, as an unrepresented party, are governed by Fed. R. Civ. P. 11.

CHMO will not pay for pre-existing injury, therefore, [t]hey needed my insurance card or the company name." *Id.*

As to the damage to Plaintiff's hand, Defendants' own *Martinez* Report[5] evidence establishes that as of November 7, 2006, no surgery had been performed [Doc. No. 28, sequential p. 6 and Exhibit 3, Attachments to the Martinez Report, p. 19] and that Plaintiff's right hand had a "prominent boney knot mid 4th metacarpal."  *Id.*  A "short synopsis" of Plaintiff's chart prepared by Defendant Hoisington and included in the *Martinez* Report, *id.* at Exhibit 2, Attachments to the *Martinez* Report, pp. 51 - 52, reflects that Plaintiff was seen for his hand on February 1, 2007, and was found to have a poor range of motion in the hand, a condition that was attributed to Plaintiff's failure to perform recommended exercise.  *Id.* at 51.

 Genuine issues of fact prevent the entry of summary judgment against Plaintiff on both the objective and subjective elements prescribed by *Estelle*.  First, as to the question of whether the harm suffered by Plaintiff "rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause[,]" *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)(citation omitted), there is evidence that Plaintiff suffered from a medical condition requiring appropriate and timely treatment.  Medical needs are serious if the need "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person

---

[5]Defendants rely on the *Martinez* Report as evidence in support of their motion for summary judgment [Doc. No. 100, Exhibit 8].  The *Martinez* Report with appended attachments was previously filed as a part of then-Defendant Whetsel's motion to dismiss [Doc. No. 28, sequential p. 6].

would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir. 1996)(citation omitted).   Plaintiff was discharged from his initial treatment with instructions that a follow-up appointment be scheduled by telephone call the following morning.  Defendants have not addressed why it took forty-seven days for that appointment to be accomplished.  Moreover, they do not dispute Plaintiff's claim that he was ultimately referred by a physician for surgery and that it was denied by Defendants. Finally, the evidence in this case of Plaintiff's pain and restriction of movement is sufficient to create a dispute with regard to the seriousness of the harm he suffered.

As to the second element, "deliberate indifference" must be demonstrated by proof that corrections personnel intentionally denied, delayed access to, or interfered with the prescribed treatment. *Estelle*, 429 U.S. at 104-05.  "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition."  *Mata,* 427 F.3d at 755.  Whether Defendants intentionally delayed – or refused –  prescribed medical treatment is in dispute, and summary judgment is precluded.

With respect to Plaintiff's claim that he did not timely receive physician-prescribed medication to treat his glaucoma, Defendants maintain as a matter of undisputed fact that:

* * *

(2)     Plaintiff informed CHMO staff that he was on glaucoma medication. (Exhibit 1, PNC Intake Questionnaire).

(3)     Plaintiff was provided glaucoma medication to keep on his person and instructed how to use that medication.  (Exhibit 2, PNC Problem Oriented Record)

* * *

(6)     Plaintiff was provided eye drops to keep on his person in his cell during the time of his stay.  (Exhibit 4, Oklahoma County Detention Center, Prisoner Authorized Items Slips).

(7)     On August 10, 2006, plaintiff complained that he was not receiving appropriate medication.  (Exhibit 5, Inmate Grievance Form).

(8)     When plaintiff complained that he was not receiving the right medication, he was informed of the fact that the generic brand of medication was the same as plaintiff's original prescription.  (Exhibit 5 and 6, Correspondence from Pam Hoisington).

(9)     On August 14, 2006 Plaintiff again made a medical complaint, which was answered by August 16, 2006 by plaintiff being informed that he had his medication on his person, and to put in a sick call if he needed additional care.  (Exhibit 7, Inmate Grievance Form).

(10)    The Oklahoma County Sheriff's department conducted an investigation following the filing of suit, and determined that the medical care plaintiff received from CHMO was adequate, and that he had received all prescribed medication.  (Exhibit 8, Martinez Report).

(11)    Plaintiff has offered no evidence that he suffered any injury, or that he should have received treatment other than that which he was provided.  (Exhibit 9, Plaintiff's Discovery Responses).

[Doc. No. 100, pp. 4 - 5].

Plaintiff responded to Defendants' motion, asserting that while he did receive some of his physician-mandated medications to control his eye pressure, this was not always the case [Doc. No. 104, pp. 7 - 8].   The evidence presented by Plaintiff in this regard demonstrates that factual issues preclude the entry of summary judgment.  For example, as

to Defendants' reliance on Prisoner Authorized Items Slips to establish that "Plaintiff was provided eye drops to keep on his person in his cell during the time of his stay, " Defendants' Undisputed Fact No. 6, Plaintiff has submitted a physician order dated July 31, 2006 – the day after Defendants claim that "Plaintiff was provided glaucoma medication to keep on his person and instructed how to use that medication," Defendants' Undisputed Fact No. 3 – that indicates that despite Plaintiff's receipt of a property slip, he had not received his eye drops [Doc. No. 104, Attachment 2, p. 1]. In uppercase letters, the physician determined that Plaintiff "NEEDS" his prescriptions. *Id.* In addition, Plaintiff submitted several pages of medication records that place into question exactly when, or if, Plaintiff received his glaucoma medications. *Id.* at Attachment 6, p. 6; Attachment 9, pp. 1 - 4. In light of the conflict in the evidence, summary judgment is not warranted.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

It is the recommendation of the undersigned Magistrate Judge that Defendants' motion for summary judgment [Doc. No. 100] be denied.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 20th day of January, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States,* 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

IT IS SO ORDERED this 30th day of December, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE